UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CARMEN MENDEZ,

      *Plaintiff,*

         -against-

NYC DEPARTMENT OF EDUCATION,

      *Defendant.*
--------------------------------X

**MEMORANDUM & ORDER**

18-CV-05894(KAM)(LB)

**MATSUMOTO, United States District Judge:**

      Plaintiff Carmen Mendez, a former New York City schoolteacher, filed the *pro se* complaint initiating this action on October 18, 2018. (ECF No. 1, Compl.) She alleges her school's principal subjected her to harassment and criminal conduct but, rather than addressing the principal's actions, the New York City Department of Education ("DOE") disciplined her instead. (*Id.* 4-5.)[1] Plaintiff seeks $5 million in damages for violations of her Sixth and Eighth Amendment rights, which she alleges resulted in a loss of employment, loss of life insurance, pension, and social security benefits, and "los[s] of dignity." (*Id.* 5.)

      The DOE served plaintiff with a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on March 1, 2019. (ECF No. 16-6, Memorandum of

---

[1]    Citations to the complaint track the pagination of the court's electronic filing system.

1

Law in Support of Defendant's Motion to Dismiss ("Mot.").)
Plaintiff opposed defendant's motion to dismiss on March 28,
2019, (ECF No. 17, Plaintiff's Affidavit/Affirmation in
Opposition to Defendant's Motion ("Opp.")), and defendant
replied on April 15, 2019.  (ECF No. 18, Reply.)  For the
reasons set forth below, the court grants the defendant's motion
and dismisses plaintiff's complaint in its entirety.

**BACKGROUND**

The following facts are drawn exclusively from
plaintiff's complaint, which the court presumes to be true for
purposes of a motion to dismiss.  *See Glob. Network Commc'ns,
Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006)
(citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.
2006)) (for a 12(b)(6) "motion, we are constrained to accept as
true the factual allegations contained in the complaint and draw
all inferences in plaintiff's favor.").  The court may also
consider documents that the plaintiff relied on in bringing suit
and that are either in the plaintiff's possession or that the
plaintiff knew of when bringing suit.  *Chambers v. Time Warner*,
Inc., 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film
Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991),
*cert. denied*, 503 U.S. 960 (1992).

## I. The Complaint

Plaintiff's allegations are sparse.  She alleges the DOE:

> allowed Principal Avila to commit crimes against me.
> Including, but not limited, keeping me from further
> [*sic*] my education, harassment, conspiracy, demining
> [*sic*] my nationality among others.  Also, NYDOE has a
> practice to write derogatory message to all employees
> who have been rightly or wrongly accused of any offense.
> The message is too broad and does not indicate the
> offense the employees committed (exhibit 1).  Therefore,
> **it violates Amendment VIII** of the Constitution of the
> United States of America because it leaves people
> unemployable.  The department also has a policy to ask
> employees to request a nomination letter from possible
> employers in order to remove the message.  However,
> employers want the removal of the message before giving
> a nomination of employment.

(Compl. 8 (emphasis in original).)

Plaintiff "want[s] the message modified to indicate the offense the employee committed."  (*Id.*)  The "message" apparently refers to the contents of "Exhibit 1," a 1-page screenshot from the "NYCAPS" DOE personnel database.  (*Id.* 7.) The screenshot displays a notice under plaintiff's name, which states "[t]his employee has an active problem code," without further description.  (*Id.*)  Plaintiff invokes the Sixth Amendment of the United States Constitution as a basis for federal question jurisdiction, (*id.* 4), though the complaint itself does not assert how plaintiff's constitutional rights were violated in this respect.  The court nonetheless construes

plaintiff's reference to the Sixth Amendment as asserting a cause of action for violation of her Sixth Amendment rights.

Plaintiff filed well over 100 pages of exhibits with her complaint, including the records of her disciplinary proceedings. Because the complaint relies on these documents, the court considers them incorporated by reference.

## II. Performance Issues

On September 4, 2001, the DOE appointed plaintiff to be a teacher and assigned her to PS/IS 328 in Brooklyn. (Compl. 7, 27.) In 2003, Douglas Avila was appointed the Principal of PS/IS 328. (*Id.* 27.) In 2004, he assigned plaintiff to a second-grade class. (*Id.* 28.) Principal Avila observed plaintiff's classroom performance twice near the end of the 2004-2005 school year, and then again at the beginning of the 2005-2006 school year. (*Id.* 29.) Avila rated each lesson he observed as unsatisfactory and gave plaintiff an unsatisfactory rating for the 2004-2005, 2005-2006, and 2006-2007 school years. (*Id.*) In addition, Assistant Principal Sonja Webber-Bey observed plaintiff's classroom four times in 2004-2005, four times in 2005-2006, and twice in 2006-2007, and likewise gave plaintiff negative performance assessments. (*Id.* 30.)

## III. First Hearing

As a result of plaintiff's poor performance evaluations, the DOE submitted that there was just cause for

plaintiff's termination and charged her with incompetence, insubordination, and neglecting her duties. (Compl. 19-26.) A neutral arbitrator, Melissa H. Biren, was appointed pursuant to New York Education Law section 3020-a to determine whether plaintiff's conduct warranted disciplinary action ("First Adjudication"). (*Id.* 17.) Hearing Officer Biren convened twelve hearings in the First Adjudication from 2009 to 2010, including an evidentiary hearing and closing arguments. (*Id.* 17-18.) Plaintiff was represented by counsel and had the opportunity to adduce evidence, make arguments, and challenge the fairness of the proceedings. (*Id.*)

In July 2010, Hearing Officer Biren learned that plaintiff had been terminated, effective July 1, 2010. (*Id.* 18.) The basis for plaintiff's termination, however, apparently did not relate to the underlying charges. Rather, plaintiff was terminated because her New York State Teaching Certificate expired. (*Id.*) Hearing Officer Biren held her decision in abeyance until the plaintiff obtained her license and sought reinstatement as a teacher. (*Id.*) On January 24, 2013, however, the DOE advised Hearing Officer Biren that it sought a decision in the First Adjudication. (*Id.*) At the time, it was unclear to Biren whether plaintiff had obtained recertification of her license and sought reinstatement as a teacher. (*Id.* n.1)

Hearing Officer Biren's decision, issued on May 8, 2013, found there was sufficient cause to terminate plaintiff's employment as a DOE teacher ("First Decision"). (*Id.* 17-75.) In the main, Hearing Officer Biren found that plaintiff failed to provide her students with a meaningful educational experience, based on ten lessons that were documented as unsatisfactory, and failed to properly maintain student assessment portfolios. (*Id.* 50-52, 75.) Hearing Officer Biren further noted that, based on the record before her, plaintiff was "resistant to implementing change in teaching pedagogy and consistently failed to incorporate instructional strategies that were suggested to improve her lessons." (*Id.* 73.)

Plaintiff subsequently challenged the First Decision in New York State Supreme Court pursuant to New York CPLR Article 75, and contended that the First Decision controverted principles of fairness. (*Id.* 76.) On August 25, 2014, Justice Joan A. Madden vacated the First Decision based on Hearing Officer Biren's failure to consider certain improvements in plaintiff's performance and the overall performance of plaintiff's students. (*Id.* 94-96.) Although Justice Madden sustained Hearing Officer Biren's findings with respect to the charges against plaintiff, she remanded the disciplinary proceeding against plaintiff for imposition of a lesser penalty. (*Id.* 106, 118.)

## IV.  Second Hearing

Hearing Officer Leah L. Murphy presided over plaintiff's disciplinary proceeding on remand ("Second Adjudication").  (Compl. 108.)  Plaintiff was represented by counsel at the Second Adjudication.  On October 26, 2015, Hearing Officer Murphy issued her decision ("Second Decision") and found that plaintiff's unsatisfactory performance warranted a two-year suspension ("Second Decision").  (*Id.* 108-22.) Despite plaintiff's nominal penalty, Hearing Officer Murphy determined that the sentence would be implemented beginning September 1, 2011, when plaintiff was re-issued a childhood education license for grades one through six.  (*Id.* 111.)  Thus, Hearing Officer Murphy explained, plaintiff's penalty was actually moot because her suspension was deemed served.  (*Id.* 122-23.)  Hearing Officer Murphy also stipulated that, if plaintiff obtained her state certification, her return to the classroom should be accompanied by assignment of a mentor teacher for the remainder of the 2015-2016 school year to monitor plaintiff and boost her performance.  (*Id.* 122.)

On November 9, 2015, plaintiff challenged the Second Decision pursuant to CPLR Article 75.  (ECF No. 16-2, Declaration of Alan R. Mildner, dated March 1, 2019 ("Mildner

Decl."), Exhibit A.)[2]  On July 12, 2016, Justice Barbara Jaffe of

the New York State Supreme Court affirmed the penalty imposed by

Hearing Officer Murphy.  (ECF No. 16-3, Mildner Decl., Exhibit

B.)  Plaintiff has not been employed by the DOE since her July

1, 2010 termination.  (Compl. 7.)

## V.    Subsequent Proceedings

In April 2012, plaintiff, represented by counsel,

filed a complaint in the New York State Supreme Court, New York

County, alleging that her July 2010 termination for failure to

maintain her teaching license was wrongful and in retaliation

for filing a complaint of corporal punishment against Principal

Avila and Assistant Principal Webber-Bey.  (ECF No. 16-4,

Mildner Decl., Exhibit C ("State Court Compl.".)  On December 4,

2012, Justice Jaffe dismissed plaintiff's complaint for failure

to file a timely Notice of Claim, as required by New York

Education Law section 3813.  (ECF No. 16-5, Mildner Decl.

Exhibit D (*Mendez v. New York City Dep't of Educ.*, Index No.

102514/2012).)

## VI.   The Motion

Defendant's motion is straightforward.  First,

defendant asserts that plaintiff's Sixth and Eighth Amendment

---

[2]    The summary order dismissing plaintiff's petition to vacate or modify
the Second Decision refers to Article 78, but the court assumes plaintiff
proceeded pursuant to Article 75.  *See* NY CPLR § 7511 (setting forth grounds
to modify or vacate an arbitration award).

claims arising from her July 1, 2010 termination are time-barred under the applicable three-year statute of limitations. (Mot. 6.) Plaintiff's allegation that the DOE allowed Principal Avila to commit crimes against and harass her also falls outside the limitations period because there is no allegation that plaintiff ever interacted with Avila after he testified in 2009 at the First Adjudication. (*Id.*) Defendant also points out that there is no indication the "derogatory" statement in plaintiff's NYCAPS profile regarding her "active problem code" was placed there within the limitations period. (*Id.*) Second, defendant contends that even if plaintiff's action had been timely, plaintiff's Constitutional claims fail because the Sixth and Eighth Amendment's protections do not extend to civil proceedings, and there is no allegation that the DOE subjected plaintiff to a criminal prosecution or otherwise accused her of committing a crime. (*Id.* 6-9.)

Plaintiff's opposition counters with various arguments. First, plaintiff insists that she pursued her claims as early as 2010 but the first three attorneys she retained or attempted to retain dropped her case for one reason or another. (Opp. 4.)[3] Plaintiff maintains she pursued her rights in state court as well, but she had the misfortune of having her case

---

[3]     Citations to the opposition, like the complaint, track the pagination of the court's electronic filing system.

assigned to Justice Jaffe, whom plaintiff claims was conflicted because her husband "does business with the DOE."  (*Id.*)  Second, plaintiff insists she was accused of stealing from taxpayers, thereby invoking the Sixth Amendment's protections for criminal prosecutions.  (*Id.*)

Third, plaintiff claims her Sixth Amendment rights were violated because the DOE paid the arbitrators who officiated her disciplinary hearings.  (*Id.* 4-5.)  She later clarifies that arbitrators are typically paid by the DOE and the plaintiff's union, the United Federation of Teachers ("UFT"), but in her case, the only payments came from the DOE because plaintiff ceased paying her UFT dues.  (*Id.* 5.)  She further avers that she did not have legal representation at her disciplinary trials, but does not square this claim with the disciplinary hearing records themselves, which clearly reflect that she was represented by counsel for all proceedings before Hearing Officers Biren and Murphy.  (*See* Compl. 17-18 (reflecting that UFT counsel represented plaintiff at First Adjudication); *id.* 78 (Justice Madden noting that plaintiff was represented by counsel at First Adjudication); *id.* 108 (reflecting that Frederic H. Araron, Esq., represented plaintiff at Second Adjudication).)  Plaintiff also claims she suffered humiliation for two years and eight months while she was assigned to the

"Rubber Room."  (*Id.* 5.)[4]  This, she believes, was "cruel and unusual punishment."  (*Id.*)

Fourth, plaintiff asserts that the DOE violated the Eighth Amendment by fining her $145,000, the equivalent of two years' salary, while other teachers in the "Rubber Room" were penalized a mere $5,000.  (*Id.*)  Plaintiff also believes that the DOE "placed a derogatory problem code" in her records to keep her from getting a job.  (Opp. 6.)  Not only was plaintiff's punishment unfair, but she contends it was more extensive than punishments doled out to other teachers for far more severe infractions.  (*Id.*)  For example, plaintiff notes that one PS/IS 328 teacher was transferred to another school after he was accused of molesting a student, but no derogatory message was placed in his file.  (*Id.*)

The plaintiff's opposition also raises, for the first time, a claim under the Fifth Amendment asserting that the DOE fired plaintiff in 2013 "for the second time . . . ."  (*Id.*)  Plaintiff's opposition also raises a First Amendment argument. (*Id.* ("Amendment I was also violated by Avila and DOE (exhibit 15).").)  Exhibit 15 to plaintiff's opposition is a memorandum from Principal Avila, dated January 21, 2005, instructing all PS/IS 328 staff that "[u]nder **no** circumstances are staff members

---

[4]     Defendant explains that the "rubber room" likely refers to plaintiff's assignment, during the pendency of her disciplinary proceedings, to a position that did not involve interaction with students.  (Mot. 6.)

to contact a student's parent or guardian without the prior approval of a supervisor." (Opp. 138 (emphasis in original).)

## LEGAL STANDARD

In reviewing the complaint, the court is mindful that plaintiff is proceeding *pro se* and that her pleading should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), however, plaintiff must still plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but must contain more than mere "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement." *Id*. For motions under Rule 12(b)(6), the court assumes the truth of all well-pleaded facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Cohen v. Rosicki, Rosicki &*

*Assocs., P.C.*, 897 F.3d 75, 78 n.1 (2d Cir. 2018) (citing *Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 481 (2d Cir. 2011)).  In addition, the court considers written attachments to the complaint, as well as any statements or documents incorporated by reference.  *Id*.

Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss. *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n. 23 (S.D.N.Y. 1995).  If "the documents contradict the allegations of a plaintiff's complaint, the documents control and the [c]ourt need not accept as true the allegations in the complaint." *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012)) (citing authorities).

**DISCUSSION**

## I.   Statute of Limitations

Though plaintiff does not expressly invoke 42 U.S.C. § 1983, she claims that the DOE, a state actor, injured her by violating her federal constitutional rights.  *See Blackson v. City of New York*, No. 14 Civ. 462 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014) (citing *McKithen v. Brown*, 481 F.3d 89,

99 (2d Cir. 2007)); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."). In other words, plaintiff asserts a claim under 42 U.S.C. § 1983 based on the DOE's alleged violations of her Sixth and Eighth Amendment rights.

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law." *Hogan* v. *Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Owens* v. *Okure*, 488 U.S. 235, 249-51 (1989)); *Pearl* v. *City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)). In New York, personal injury actions are subject to a three-year statute of limitations. NY CPLR § 214(5); *see Pearl*, 296 F.3d at 79. The limitations period begins to run when: (1) the plaintiff knows or has reason to know of the injuries caused by an individual defendant, *see Singleton* v. *City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981); or (2) the plaintiff knows or has reason to know that a municipal defendant has an unconstitutional "policy or custom," *see Pinaud* v. *County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995). Only the first ground for accrual will be considered because the complaint does

not allege that the DOE maintained any policy or custom relevant to the purported Sixth and Eighth Amendment violations.

"Granting a motion to dismiss on the basis of a lapsed limitations period is proper when it is clear on the face of the complaint that a claim is untimely." *Wallace Wood Properties, LLC v. Wood*, 669 F. App'x 33, 34 (2d Cir. 2016), *as amended* (Nov. 17, 2016).  Plaintiff filed her complaint on October 18, 2018.  Plaintiff is time-barred from asserting claims arising prior to October 18, 2015, including her July 1, 2010 termination, the First Decision issued on May 8, 2013, and the alleged crimes and harassment committed against her by Principal Avila, none of which is alleged to have taken place on or after October 18, 2015.

The court also discerns no basis for equitable tolling.[5]  The doctrine of equitable tolling can apply in the context of § 1983 claims, *see Covington v. N.Y.C. Police Dep't.*, 471 Fed. Appx. 28, 29 (2d Cir. 2012), but it is appropriate only "in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y. Transit Auth.*, 333 F.3d 74,

---

[5]    "The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules . . . . '" *Pearl*, 296 F.3d at 80 (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980)).  "New York courts have adopted the same equitable tolling doctrine that exists under federal law." *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 235 (E.D.N.Y. 2015) (citations omitted).

80 (2d Cir. 2003) (citations and quotations omitted).  A
plaintiff arguing that equitable tolling is justified "must show
that extraordinary circumstances prevented him from filing his
petition on time, and he must have acted with reasonable
diligence throughout the period he seeks to toll." *Baldayaque
v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) (citations
omitted).  Plaintiff here alleges no such thing.  Though
plaintiff excuses her tardily-filed claims by pointing to the
failures or lapses of her counsel, she does not allude to any
egregious acts by her attorneys that prevented a timely filing.
*Id.* at 152-53.  Plaintiff's baseless aspersion against Justice
Jaffe, who dismissed plaintiff's State Court Complaint, is also
unavailing.  The State Court Complaint asserted claims for
wrongful termination and retaliation, not violations of the
Sixth and Eighth Amendment.  (State Court Compl. ¶¶ 17-33.)
Even if Justice Jaffe was conflicted, plaintiff cannot seek to
toll claims that she did not even pursue in New York State
Supreme Court.

     On the other hand, it is not clear to the court when
the purported "derogatory" message stating that plaintiff had
"an active problem code" first appeared on her NYCAPS profile.
*See Wood*, 669 F. App'x at 34.  In addition, the Second Decision
was issued on October 26, 2015, within the applicable
limitations period.  Accordingly, any claims based on Hearing

Officer Murphy's imposition of a two-year suspension, or plaintiff's "active problem code" status on NYCAPS, are not time-barred at the motion to dismiss stage. As discussed below, however, these allegations nonetheless fail to state a claim.

## II.  Eighth Amendment Claim

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has noted that the Cruel and Unusual Punishments Clause of the Eighth Amendment was designed to protect those convicted of crime, *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977), and is inapplicable in the context of plaintiff's allegations. *See McTate v. Ayotte*, No. 17-CV-9412 (CM), 2018 U.S. Dist. LEXIS 103428, at *4 (S.D.N.Y. June 19, 2018). Plaintiff cannot state a claim for violation of the Cruel and Unusual Punishments Clause because she was not convicted of a crime. Thus, her "active problem code" status on NYCAPS, Principal Avila's purported remarks to her, and her assignment to the "Rubber Room," all of which plaintiff asserts constitute cruel and unusual punishment, do not support a claim under the Eighth Amendment.

Plaintiff also asserts in her opposition, though not her complaint, that the DOE violated the Eighth Amendment's

Excessive Fines Clause by "fining" her $145,000, or the equivalent of two years' salary. (Opp. 5.) The Excessive Fines Clause, unlike the Cruel and Unusual Punishments Clause, applies to civil proceedings and "'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *von Hofe v. United States*, 492 F.3d 175, 178 (2d Cir. 2007) (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993)). A fine refers to "a payment to a sovereign as punishment for some offense." *Id.* at 182-83 (*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 (1989)). "The form of the fine is irrelevant and may be a payment in kind, *i.e.*, a forfeiture, or a payment in cash." *Id.* at 182.[6] The Second Circuit has adopted a two-step inquiry to decide "whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016) (citing *United States v. Bajakajian*, 524 U.S. 321 (1998)). First, a court must consider whether the payment or forfeiture at issue constitutes a "fine," meaning that it is punitive in nature and not "purely 'remedial.'" *Id.* at 109. Second, a court weighs four factors to determine whether the fine is "grossly disproportional" to the underlying offense.

---

[6] In *Timbs v. Indiana*, the Supreme Court held that the Fourteenth Amendment incorporates the Eighth Amendment's prohibition against excessive fines and that it therefore applies to the states. 139 S. Ct. 682, 689, 203 L.Ed.2d 11 (2019).

*Id.* at 110.  Ultimately, whether a fine is excessive "involves solely a proportionality determination."  *Id.* at 111 (emphasis in original).

The court need not assess whether or not plaintiff's alleged fine was excessive because plaintiff fails to allege that she was subject to any fine in the first place. Plaintiff's claim that she was fined is utterly contradicted by the documents appended to the complaint, *see 2002 Lawrence R. Buchalter Alaska Tr.*, 96 F. Supp. 3d at 199, including the First and Second Decisions.  Neither hearing officer imposed a fine as a condition of plaintiff's discipline.  Defendant deduces, and the court agrees, that plaintiff has contorted Hearing Officer Murphy's imposition of a two-year suspension without pay into a fine.  The court is unaware of any case in which a suspension without pay was construed as a fine, much less deemed a violation of the Excessive Fines Clause.  Plaintiff's two-year suspension may have temporarily revoked her ability to teach in the classroom and thereby collect a paycheck for her services, but Hearing Officers Biren and Murphy did not compel plaintiff to pay or relinquish money or property of any kind or in any form.  Thus, there was no extraction of payment from plaintiff to the DOE or the City of New York, which is the essence of a fine.  *von Hofe*, 492 F.3d at 183-83.  Plaintiff's alleged punishment, therefore, cannot be reasonably construed as a

"fine," thus removing her two-year suspension from the ambit of the Excessive Fines Clause.[7]  Plaintiff's Eighth Amendment claim must be dismissed.

## III.  Sixth Amendment Claim

Plaintiff's Sixth Amendment claim is not easily deciphered, but it appears premised on the assertion that Hearing Officers Biren and Murphy were biased because they were paid by the DOE, that plaintiff did not have legal representation at her disciplinary hearings, and that she spent over two years in the "Rubber Room."  The court construes these allegations, all raised for the first time in her opposition, as invoking plaintiff's Sixth Amendment rights to a speedy trial by an impartial jury and her right to counsel.

Plaintiff fails to state a claim for violation of the Sixth Amendment because she was not subject to a criminal prosecution.  The Sixth Amendment of the United States Constitution provides:

> *In all criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the

---

[7]     Even if plaintiff's suspension without pay was found violative of the Excessive Fines Clause, her claim would be time-barred.  Hearing Officer Murphy explained in the Second Decision that, despite imposing a two-year suspension, the penalty was imposed retroactively as of September 2011, when plaintiff's teaching license was restored, and thus deemed served.  (Compl. 122.)  In other words, plaintiff's DOE-mandated suspension ended in September 2013, more than three years before plaintiff commenced this action.  Any claims arising from that suspension are beyond the applicable limitations period.

> nature and cause of the accusation; to be confronted
> with the witnesses against him; to have compulsory
> process for obtaining witnesses in his favor, and to
> have the Assistance of Counsel for his defence.

U.S. Const. amend. VI (emphasis added). The Supreme Court has held that "[t]he protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions." *Austin v. United States*, 509 U.S. 602, 608 (1993) (citation and internal quotation marks omitted). Though the First and Second Adjudications were clearly not criminal prosecutions, plaintiff argues they were akin to criminal proceedings because she was accused of "stealing from tax payers," and therefore the Sixth Amendment's protections attached. (Opp. 4.) No such accusation appears in the DOE's charges and specifications against plaintiff, and the complaint does not allege that plaintiff was charged with criminal tax fraud or tax evasion, or any other criminal statute. Accordingly, plaintiff's Sixth Amendment claim is dismissed.

## IV. Unpled Claims

Plaintiff asserted two additional causes of action for the first time in her opposition. Although a plaintiff may not assert new claims in opposition to a motion to dismiss, *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 231 (S.D.N.Y. 2013), the court nonetheless addresses those claims. First, plaintiff alleges that the DOE violated her Fifth Amendment

rights when it terminated her for the "second time" in 2013.
The court believes plaintiff is referring to the Fifth
Amendment's Double Jeopardy Clause.  The Fifth Amendment to the
United States Constitution provides that "[n]o person shall . .
. be subject for the same offence to be twice put in jeopardy of
life or limb."  U.S. Const. amend. V.  "Jeopardy" refers to the
"risk that is traditionally associated with a criminal
prosecution." *Breed v. Jones*, 421 U.S. 519, 528 (1975).  The
Double Jeopardy Clause thus only applies to proceedings that are
"essentially criminal" in nature. *See id.*  The court is unaware
of any case in which administrative disciplinary proceedings,
such as the First and Second Adjudications, were considered
"essentially criminal."  Indeed, the Supreme Court has held that
even prison disciplinary proceedings are not "essentially
criminal" for Double Jeopardy purposes. *Knight v. Semple*, No.
3:18-CV-703 (SRU), 2018 WL 4623030, at *3 (D. Conn. Sept. 26,
2018) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).
Because plaintiff's disciplinary proceedings were not
"essentially criminal" in nature, plaintiff's Fifth Amendment
claim is dismissed.

Plaintiff also raises a First Amendment claim based on
Principal Avila's 2005 memorandum instructing PS/IS 328's
teachers not to contact their students' parents or guardians
without the prior approval of a supervisor.  This claim runs

afoul of § 1983's three-year limitations period and plaintiff does not allege any instance in which her speech was chilled after the 2005 memorandum was issued.  Plaintiff's First Amendment claim is time-barred, and therefore, dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED and plaintiff's complaint is DISMISSED in its entirety.  The court construes plaintiff's complaint as asserting violations of the Sixth and Eighth Amendments to the United Statutes Constitution pursuant to 42 U.S.C. § 1983. Plaintiff's claims are time-barred pursuant to § 1983's three-year statute of limitations, except for plaintiff's Sixth and Eighth Amendment claims arising from Hearing Officer Murphy's October 26, 2015 decision and the "derogatory message" placed on defendant's NYCAPS profile page.  Though not time-barred, plaintiff's claim under the Eighth Amendment's Cruel and Unusual Punishments Clause is dismissed because plaintiff does not allege that she was subject to a criminal conviction, and her claim under the Excessive Fines Clause is dismissed because she fails to plausibly allege that she was fined.  Plaintiff's claim that her Sixth Amendment rights were violated also fails because the First and Second Adjudications were not criminal prosecutions.  In addition, plaintiff's unpled claims raised in her opposition are dismissed.  Plaintiff's First Amendment claim

is time-barred and she cannot assert a claim pursuant to the Fifth Amendment's Double Jeopardy Clause because plaintiff's disciplinary trial was not a criminal proceeding.

Given plaintiff's *pro se* status, however, the court will permit her leave to replead, as it does not find that amendment for her timely claims would be futile. If plaintiff elects to file an amended complaint, she must provide facts pertinent only to her timely claims regarding Hearing Officer Murphy's imposition of a two-year suspension, and, the possibly timely claim regarding the "active problem code" for plaintiff's NYCAPS status.  Plaintiff cannot rely on generalized allegations of constitutional violations.  Should plaintiff file an amended complaint, it must be filed within 30 days from the date of this Order, and must be captioned "AMENDED COMPLAINT."

Plaintiff is advised that an amended complaint does not simply add to the first complaint and, if filed, will completely replace her original complaint.  Therefore, plaintiff must include in the amended complaint all the necessary and relevant information that was contained in the original complaint, except for claims that are time-barred.  If plaintiff fails to file an amended complaint within the time allowed, judgment dismissing this action shall enter for the reasons set forth herein.

Defendant is directed to serve a copy of this Memorandum and Order on plaintiff at her address of record and note service on the docket.

**SO ORDERED.**

Dated:    March 4, 2020
          Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge